RANDOLPH, Senior Circuit Judge,
concurring in part and concurring in the judgment:
I do not join parts III and IV of Judge Brown’s opinion because I do not believe we need to reach the potentially far-reaching corporate free-exercise question. Other courts in contraceptive-mandate cases have “decline[d] to address the unresolved question of whether for-profit corporations can exercise religion.” Tyndale House Publishers, Inc. v. Sebelius, 904 F.Supp.2d 106, 114 (D.D.C.2012); see Legatus v. Sebelius, 901 F.Supp.2d 980, 988 (E.D.Mich.2012); cf. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114 (10th Cir.2013) (en banc) (majority opinion) (addressing only claims by corporate, but not individual, plaintiffs). The same approach may be used without deciding the rights of the Freshway Corporations because the government could enforce the mandate against the corporations only by compelling the Gilardis to act. Since “it is not necessary to decide more, it is necessary not to decide more.” PDK Labs. Inc. v. U.S. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in the judgment).
We should be particularly hesitant to pass unnecessarily on such a complex issue. If secular for-profit corporations can never exercise religion, what of profitable activities of organized religions? See Hernandez v. Comm’r, 490 U.S. 680, 709, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (O’Connor, J., dissenting). If only religious for-profit organizations have a free-exercise right, how does one distinguish between religious and non-religious organizations? See Hobby Lobby Stores, 723 F.3d at 1136-37 & n. 12; id. at 1170-75 (Briscoe, C.J., concurring in part and dissenting in part). Why limit the free-exercise right to religious organizations when many business corporations adhere to religious dogma? See Mark L. Rienzi, God and the Profits: Is There Religious Liberty for MoneyMakers?, 21 Geo. Mason L.Rev. (manuscript at 11-24) (forthcoming fall 2013). If non-religious organizations do not have free-exercise rights, why do non-religious natural persons (atheists, for example) possess them? Torcaso v. Watkins, 367 U.S. 488, 495-96 & n. 11, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). If a corporate free-exercise right is recognized, in any form, *1225 there are equally challenging secondary questions. How should the beliefs of a religious corporation be determined? Can publicly traded corporations be religious? If so, do they take on the religions of their shareholders as a matter of course? If a religious corporation is sold, does it retain its religious identity? These questions, challenging in themselves, would confront us in different permutations across the diverse entity forms and organizational structures of the American business landscape.
I also write separately to emphasize the importance of the Freshway Corporations’ election to be taxed under subchapter S of the Internal Revenue Code. I.R.C. §§ 1361-1379. As a result, the Freshway Corporations do not pay corporate income taxes. See I.R.C. § 1363(a). Instead, the income of the Freshway Corporations passes through, pro rata, to their shareholders, the Gilardis. See I.R.C. § 1366(a)(1). Subchapter S disregards the corporate form for purposes of the corporate income tax. We must ask why Congress would have disregarded the corporate form for subchapter S corporations but then wanted it imposed to prevent their owners from asserting free-exercise rights under RFRA. There is no good answer, or at least we have received none. It would be incongruous to emphasize the corporate veil in rigid form for RFRA purposes while disregarding it for tax purposes under subchapter S. This inference is particularly compelling because both subchapter S and the “tax” that enforces the contraceptive mandate are part of the Internal Revenue Code. I.R.C. § 4980D.
The pass-through provisions of subchapter S matter for an additional reason. If the Gilardis do not order the Freshway Corporations to comply with the mandate, then their individual tax returns will be directly affected. As shareholders of an S Corporation (technically, they are treated as one shareholder under I.R.C. § 1361(c)(l)(A)(ii)), they would “take[ ] into account” their “pro rata share of the corporation’s ... income” in determining their income tax liabilities. I.R.C. § 1366(a)(1). In other words, as a direct result of the mandate’s operation the Gilardis themselves will have less income in each taxable year. This underscores the “pressure on [the Gilardis] to modify [their] behavior and to violate [their] beliefs.” Thomas v. Review Bd. of Ind. Emp’t Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).